**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

Melanie Griffiths, individually and on behalf of all other similarly situated,

                              *Plaintiff*,

              v.                                                    Case No.

U-Haul International, Inc.
                              *Defendant*.

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Melanie Griffiths, and all other people similarly situated, by and through their attorneys, Merson Law, PLLC, allege, based upon information and belief, that at all relevant times herein:

1.    Defendant U-Haul International, Inc. ("U-Haul") uses a deceptive business practice called "drip pricing" to lure customers into buying services at a low, but false, advertised price.

2.    "Drip pricing" is a deceptive strategy where additional fees are revealed incrementally during the purchase process.  That is, a good or service begins with a low base price but adds mandatory fees – such as service fees or costs – as customers progress through checkout.  It misleads customers about the true costs of goods or services.

3.    Drip pricing misleads reasonable consumers because it leverages human psychology: "our brains tend to fix on the price we first encountered even after we learn of the

1

total cost.  And even when customers learn about the hidden fees, they often pay up rather than shop around . . . because they figure that investing more time into searching for it will not be worthwhile."[1]

4.    U-Haul rents trucks, trailers, as well as storage units and containers, allowing customers to rent and purchase equipment to help them move.

5.    U-Haul lures customers in with the promise of a low advertised rate for that equipment.  Then, right before finishing the transaction, U-Haul breaks that promise, adding an extra "Environmental Fee."

6.    That bait-and-switch is paradigmatic drip pricing.  It is also unlawful.

7.    The Environmental Fee – besides being unlawful drip pricing – is also a sham "junk fee."  That is, they do not correspond to any actual extra service that could reasonably be separated from the all-in price.

8.    U-Haul admits that the Environmental Fee "partially covers operations that indirectly benefit our customers."

9.    The fees are simply a second payment for product or service that U-Haul purports to provide.

10.   As a result of these deceptive practices, customers pay more than U-Haul purports to offer in its online advertisements.

11.   Plaintiff, Melanie Griffiths, individually and on behalf of all others similarly situated, bring this case and seeks monetary damages and equitable relief to remedy past and prevent future deceptive practices.

---

[1] Santul Nerkar, *It's a Great Deal, Before the "Drip Pricing,"* NY Times, https://www.nytimes.com/interactive/2024/02/23/business/what-is-drip-pricing.html (last accessed Jan. 13, 2026).

12. This is a proposed class action, seeking monetary damages and equitable relief from Defendant's misrepresentations, omissions, and misleading conduct arising from its deceptive and fraudulent practices.

### PARTIES

13. Ms. Griffiths is a citizen of New York.

14. Defendant U-Haul is headquartered in Arizona. U-Haul has transacted business in New York and throughout the United States.

### JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed class are citizens of a state different from Defendant.

16. This Court has personal jurisdiction over Defendant because it has purposefully availed itself of the privilege of conducting activities within this forum and Defendant's contacts gave rise to Plaintiff's claims.

17. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred this judicial district.

### FACTS

#### *U-Haul Drip Pricing*

18. U-Haul rents and sells moving goods and services. For instance, U-Haul rents moving trucks to consumers.

19. U-Haul has both an app and website, where consumers can purchase those goods and services.

3

20.     To begin a truck rental, consumers choose their pickup locations, drop-off location, and their pickup date:



21.     U-Haul then advertises various trucks of different sizes along with the respective prices of each truck.  For example, below U-Haul initially advertises a fifteen-foot truck as costing $307.00.



22.     After selecting that truck, on a new screen, consumers choose a pickup time and location:



23.     On a new screen, consumers choose the drop-off location, where U-Haul again

advertises the price of its truck: $307.00.



24.     On the next screen, consumers can choose whether to purchase damage protection for

their trip.



25. After choosing whether to purchase that damage protection, consumers go through several more screens, offering more goods and services to add to their truck rental, such as storage services, moving supplies, movers, etc.

26. Finally, after multiple price advertisements and following navigating through almost ten separate webpages, consumers – for the first time at the end of the transaction – are presented a new price. U-Haul tacks on an "Environmental Fee." Here, that fee is an additional $5.00.



27. According to U-Haul, the fee is "used to support and foster the development and maintenance of sustainable U-Haul business operations. For example, operations that directly benefit our customers include, but are not limited to, the use of aerodynamic fuel-saving truck skirts, the fuel economy gauge, CNG and propane trucks, storage re-use centers, and an expanding alt-fuel propane infrastructure. The fee also partially covers operations that indirectly benefit our customers, such as energy-

efficient lighting and HVAC retrofits, waste-oil heaters, water recycling units, van-body storage units, permeable ground cover and other water/energy saving projects."[2]

28.    Nothing requires U-Haul to charge consumers an "environmental fee."  Rather, U-Haul chooses to charge that fee as part of its products and services.  That is, it is simply part of the price of U-Haul's goods and services but one hidden from consumers until the end of the transaction.

29.    As one journalist put it: "These fees could, in theory, be wrapped into the original price, but instead they're tacked on at the end."[3]

30.    U-Haul's pricing strategy is paradigmatic drip pricing, revealing additional fees incrementally during the purchasing process.  It is misleading, and it is unlawful.

31.    U-Haul uses these deceptive advertising practices because the advertised price is important to consumers. Consumers are more likely to rent a truck if they believe they are getting a good deal.

32.    U-Haul knows that its advertised price is important for both consumers and the market.

33.    For instance, U-Haul knows that for every incremental dollar that it raises its advertised price, there is a consequential incremental decline in demand for its products.

---

[2] *See* U-Haul, Frequently Asked Questions, https://www.uhaul.com/FrequentlyAskedQuestions/ (last accessed Feb. 19, 2026)
[3] Emily Stewart, *The Rise of "Bait-and-Switch Pricing,"* Business Insider (May 8, 2025), https://www.businessinsider.com/uhaul-truth-in-advertising-deceptive-bait-switch-pricing-allegation-2025-5, (last accessed Feb. 19, 2026)

34.    But U-Haul also knows that it can raise its prices incrementally without the same corresponding reduction in demand if it hides that price hike until the end of a long transaction process.

### Drip Pricing is Unfair and Deceptive and Harms Consumers

35.    Advertising a price that does not reflect the actual cost to the consumer – which is what U-Haul does – is deceptive, unfair, and unlawful.

36.    Drip pricing leverages behavior psychology.  Specifically, drip pricing leverages "anchoring" bias and the "sunk cost" fallacy.

37.    Anchoring is a cognitive bias where individuals rely too heavily on the first piece of information offered – the "anchor" – when making decisions.

38.    For prices, consumers anchor to the piece of information that they think is most important – here, the initially advertised price – and focus on that information.  And because they have "anchored" on the headline price, they fail to adjust their perception of the value of the offer sufficiently as additional costs are revealed.[4]

39.    U-Haul "anchors" customers at the initial, low advertised price.  Customers are anchored to that price even after later learning of hidden fees.

40.    Sunk cost fallacy is a phenomenon whereby a person is reluctant to abandon a strategy or course of action because they have invested in it, even where it is clear abandonment would be more beneficial.

---

[4] *See* Federal Trade Commission, *A Conference on the Economics of Drip Pricing*, (May 21, 2012), https://www.ftc.gov/sites/default/files/documents/public_events/economics-drip-pricing/transcript.pdf

41.   That is why U-Haul, before "dripping" the true price of its goods and services, requires customers to click through almost ten screens, selecting or declining various services, such as storage, moving equipment, insurance, movers, etc.

42.   By clicking through the various screens, consumers are required to "sink" more time into the transaction, which magnifies the perceived costs of abandoning that transaction even after the Environmental Fee is revealed.

43.   Reasonable customers, like Plaintiff, expect the advertised cost of goods and services to be the true cost of those goods and services.

44.   Besides the addition of taxes, reasonable customers do not expect the actual cost of goods and services to exceed the advertised costs or that the advertised cost will be subject to substantial, superfluous fees unconnected to any additional service provided like U-Haul's "Environmental Fee."

45.   The FTC has explained: "Quoting a misleading, artificially low price and then adding in mandatory fees and other charges throughout the buying process – a practice known today as drip pricing – is a quintessential example of bait-and-switch pricing and is a practice that falls squarely within the scope of the Commissions' long history of work to protect consumers."[5]

46.   Researchers have found that, among different price framing strategies, drip pricing was the most pernicious, reducing consumer welfare significantly compared to transparent, per unit pricing, leading to a reduction in search effort.[6]

---

[5] Federal Trade Commission, *Trade Regulation Rule on Unfair or Deceptive Fees*, 16 C.F.R. Part 464 (2025).
[6] *See, e.g.*, Charlotte Duke, *Using Behavioral Experiments to Identify Consumer Problems in Markets: Partitioned Pricing Practices*, London Economics (2014), https://londoneconomics.co.uk/wp-content/uploads/2014/01/OFT-presentation-14Jan-2014.pdf

47. U-Haul's drip pricing techniques also fall within the scope of the kinds of "Junk Fees" that the government has criticized. For instance, former FTC Chair Lina Khan explained the FTC proposed a rule banning junk fees, so that "corporations can't lure people in with an artificially low price, but then, when it's time to make the purchase, add all sorts of mystery fees that significantly raise the overall cost."[7]

48. U-Haul's "Environmental Fee" is a sham. U-Haul admits that the fee "partially covers operations." Really, it is part of the price of its services, which it conceals until the end of the transaction. That is, consumers get no extra good or service through the environmental fee, they simply discover that they must pay more for the same good or service.

### Plaintiff Were Harmed by U-Haul's Unfair and Deceptive Drip Pricing

49. On August 31, 2024, Ms. Griffiths needed to rent a moving truck.

50. After searching for a truck, Ms. Griffiths saw a U-Haul truck and its advertised price.

51. Based on that advertised price, Ms. Griffiths decided to rent a U-Haul through U-Haul's website.

52. Ms. Griffiths clicked through all the screens on U-Haul's, selecting or declining insurance, storage, movers, etc.

53. At the last stage of the checkout process, U-Haul finally revealed an "environmental fee," which Ms. Griffiths paid.

54. Ms. Griffiths rented and picked up her truck from U-Haul's location at 1380 Rockaway Parkway, Canarsie, NY 11236.

---

[7] Federal Trade Commission, *Remarks of Chair Lina M. Khan*, https://www.ftc.gov/system/files/ftc_gov/pdf/remarks-by-chair-lina-m-khan-at-the-white-house-virtual-convening-on-junk-fees.pdf

55.  The drip-pricing method by which U-Haul revealed that environmental fee to Ms. Griffiths was unfair and deceptive, and it harmed Plaintiff who paid that fee.

## CLASS ALLEGATIONS

56.  Plaintiff brings her claims individually and on behalf of the following class and subclasses:

   a.  Nationwide Class (Excluding California): All persons who purchased goods or services from U-Haul that included an "Environmental Fee" in the United States – excluding California – during the applicable statute of limitations.

   b.  New York Subclass: All persons who purchased goods or services from U-Haul that included an "Environmental Fee" in New York during the applicable statute of limitations.

57.  The following people are excluded from the class and the subclasses: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendant's counsel, and their experts and consultants; and (6) the legal representatives, successors, and assignees of any excluded persons.

### *Numerosity*

58.  The proposed class contains members so numerous that separate joinder of each member of the class is impractical. There are millions of proposed class members.

11

*Commonality*

59.   There are questions of law and fact common to the proposed class. Common questions of law and fact include, without limitation:

a.   Whether U-Haul utilized drip pricing or junk fees;

b.   Whether U-Haul included hidden fees in the sale of goods or services;

c.   Whether U-Haul's pricing misled or deceived consumers;

d.   Whether U-Haul violated state consumer protection laws;

e.   Whether U-Haul's advertised pricing constituted intentional or negligent misrepresentations;

f.   Whether U-Haul was unjustly enriched by its deceptive pricing practices;

g.   The monetary relief needed to reasonably compensate Plaintiff and the proposed class.

*Typicality*

60.   Plaintiff's claims are typical of the proposed class. Like the proposed class, Plaintiff purchased goods and services from U-Haul that were subject to an unlawful "Environmental Fee."

*Predominance and Superiority*

61.   The prosecution of separate actions by individual members of the proposed class would create a risk of inconsistent or varying adjudication with respect to individual members, which would establish incompatible standards for the parties opposing the class. For example, individual adjudication would create a risk that U-Haul's pricing strategies are found to be unlawful for some consumers, but not other similarly-situated consumers.

12

62. Common questions of law and fact predominate over any questions affecting only individual members of the proposed class. These common legal and factual questions arise from central issues which do not vary from class member to class member, and which may be determined without reference to the individual circumstances of any particular class member. For example, a core liability question is common: whether U-Haul's use of drip pricing and junk fees is deceptive and violates consumer protection laws.

63. A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical. It would be unduly burdensome to separately litigate millions of individual claims.

## CAUSES OF ACTION

### Count 1: Violations of New York General Business Law § 349, et seq. (By Plaintiff and the New York Subclass)

64. Plaintiff incorporates the allegations set forth above.

65. Plaintiff brings this cause of action on behalf of themselves and members of the New York Subclass.

66. U-Haul violated New York General Business Law § 349.

67. As alleged more fully above, U-Haul engaged in consumer-oriented conduct.

68. By using inherently deceiving practices such as drip pricing, U-Haul's conduct is materially misleading.

69. U-Haul's initially advertised prices did not reflect the entire price that Plaintiff and other Subclass members were required to pay (excluding taxes).

70. Plaintiff and other Subclass members reasonably relied on U-Haul's advertised prices. Specifically, Plaintiff and other Subclass members reasonably believed that the advertised prices for U-Haul's goods and services, including truck rentals, included all fees and charges besides taxes.

71. Plaintiff and other Subclass members made purchasing decisions based on the false prices displayed by U-Haul.

72. Plaintiff and other Subclass members were harmed by paying fees that were deceptively "dripped," and revealed only after consumers click through several screens immediately before finalizing the transaction.

73. Class-wide reliance can be inferred because U-Haul's misrepresentations were material. That is, a reasonable consumer would consider the advertised price of goods and services important in deciding whether to purchase those goods or services.

74. U-Haul's unfair and deceptive practices and price misrepresentations were a substantial factor and proximate cause of the resulting damages and losses to Plaintiff and other Subclass members.

75. Plaintiff suffered an injury: paying an additional fee that was unfairly and deceptively not included in the advertised price and revealed only after a long checkout process immediately before finishing the transaction.

### *Count II: Intentional Misrepresentation (Fraud)*
### *(By Plaintiff and the Nationwide Class Excluding California)*

76. Plaintiff re-alleges and incorporates by reference all previous paragraphs.

77. Plaintiff bring this cause of action on behalf of herself and members of the Nationwide Class (excluding California).

78. As alleged more fully above, U-Haul made false representations and material omissions of fact to Plaintiff and Class members concerning the price of U-Haul's goods and services.

79. Those representations were false because the advertised price did not constitute the full price (excluding Government taxes) that a consumer was required to pay to complete the purchase.

80. When U-Haul made the misrepresentations, they knew that they were false at the time that they made them and/or acted recklessly in making the misrepresentations.

81. Specifically, U-Haul knew that the advertised price was not the full price that a consumer would have to pay to complete the transaction.

82. U-Haul intended to attract consumers by listing lower prices than a consumer would actually have to pay.

83. U-Haul's conduct is particularly egregious because (1) labeling the hidden fee as an "environmental fee" would lead a reasonable consumer to believe that the fee is a lawful, legitimate charge, and (2) the fee is only displayed after a consumer has clicked through approximately 10 pages and reached the end of the checkout process – that is, after the consumer has "sunk costs" into the transaction.

84. U-Haul intended that Plaintiff and Class members rely on these representations.

85. Plaintiff and Class members read and reasonably relied on U-Haul's representations. Plaintiff saw, read, and reasonably relied on advertised price of rental trucks when purchasing rental trucks from U-Haul.

86. U-Haul engaged in this deceptive pricing practice to increase its profits. That is, U-Haul knows it can extract incremental profits from consumers without a consequent

decline in demand if it hides the incremental price hikes until the end of a lengthy transaction process.

87. U-Haul relied on consumers' anticipated unwillingness to restart the transaction having already "sunk costs" by clicking through numerous pages and expended time on the transaction.

88. U-Haul's misrepresentations were a substantial factor in Plaintiff's purchase decisions. Specifically, Plaintiff and other Class members made purchasing decisions based on the prices displayed by U-Haul. In addition, Class-wide reliance can be inferred because U-Haul's misrepresentations were material, i.e., a reasonable consumer would consider the price of goods and services important in deciding whether to purchase said goods or services.

89. U-Haul's misrepresentations were a substantial factor and proximate cause in the resulting damage and losses to Plaintiff and Class members.

90. Plaintiff and each Class member suffered injury amounting to no less than the hidden fees that U-Haul unlawfully failed to display in the advertised price of U-Haul's goods and services.

91. Plaintiff and Class members were injured as a direct and proximate result of U-Haul's conduct.

## Count III: Negligent Misrepresentation
### (By Plaintiff and the Nationwide Class Excluding California)

92. Plaintiff re-alleges and incorporates by reference all previous paragraphs.

93. Plaintiff brings this cause of action on behalf of herself and members of the Class.

16

94. As alleged more fully above, U-Haul made false representations and material omissions of fact to Plaintiff and Class members concerning the price of U-Haul's goods and services.

95. U-Haul's representations were false because the advertised price did not constitute the full price (excluding Government taxes) that a consumer was required to pay to complete the purchase.

96. When U-Haul made the misrepresentations, they knew or should have known that they were false. U-Haul had no reasonable grounds for believing that these representations were true when made. Specifically, U-Haul knew or should have known that the advertised price was not the full price that a consumer would have to pay to complete the transaction.

97. U-Haul intended that Plaintiff and Class members rely on these representations and Plaintiff and Class members read and reasonably relied on them.

98. U-Haul intended to attract consumers by listing lower prices than a consumer would actually have to pay, increasing its profits without incurring the decreased demand that higher, transparent advertised prices would have caused.

99. U-Haul engaged in this deceptive pricing practice to increase its profits.

100. Plaintiff saw, read, and reasonably relied on U-Haul's advertised prices and statements when purchasing products and services from U-Haul.

101. U-Haul's misrepresentations were a substantial factor in Plaintiff's purchase decisions.

102. Plaintiff and other Class members made purchasing decisions based on the prices displayed by U-Haul, which did not include U-Haul's "environmental fee."

17

103. Class-wide reliance can be inferred because U-Haul's misrepresentations were material: a reasonable consumer would consider the advertised price of goods or services important when purchasing those goods or services.

104. U-Haul's misrepresentations were a substantial factor and proximate cause in causing damage and losses to Plaintiff and Class members.

105. Plaintiff and the Class members each suffered injury amounting to no less than the hidden fees that U-Haul unlawfully failed to display in the advertised price of U-Haul's goods and services.

106. Plaintiff and Class members were injured as a direct and proximate result of U-Haul's conduct.

### Count IV: Unjust Enrichment
#### (By Plaintiff and the Nationwide Class Excluding California)

107. Plaintiff re-alleges and incorporate by reference all previous paragraphs.

108. Plaintiff brings this cause of action on behalf of herself and all members of the Class.

109. U-Haul has been unjustly enriched by improperly charging Plaintiff and Class members unlawful hidden fees.

110. U-Haul was directly and unjustly enriched because U-Haul induced customers to purchase goods and services from U-Haul through unfair and deceptive pricing and advertising, as described above.

111. By paying those unfair and deceptive fees, Plaintiff and the Class conferred a benefit to U-Haul: the "environmental fee" that was initially hidden from customers and revealed at the end of a lengthy transaction process.

112. U-Haul knew and appreciated this benefit.  Indeed, it crafted its unfair and deceptive pricing strategy to obtain that benefit.

113. It is inequitable for U-Haul to retain that benefit.

114. Plaintiff and Class members each suffered injury amounting to no less than the hidden fees that U-Haul unlawfully failed to display in U-Haul's advertised prices.

115. Plaintiff and Class members were injured as a direct and proximate result of U-Haul's conduct.

116. Plaintiff and Class members seek restitution of all amounts that U-Haul improperly charged them.

## PRAYER FOR RELIEF

117. Plaintiff seeks the following relief for themselves, and all Subclass and Class members:

a. An order certifying the asserted claims, or issues raised, as a class action;

b. A judgment in favor of Plaintiff and the proposed class;

c. Damages, treble damages, and punitive damages where applicable;

d. Restitution;

e. Disgorgement, and other just equitable relief;

f. Pre- and post-judgment interest;

g. An injunction prohibiting Defendant's deceptive conduct, as allowed by law;

h. Reasonable attorneys' fees and costs, as allowed by law;

i. Any additional relief that the Court deems reasonable and just.

## JURY DEMAND

118. Plaintiff demands the right to a jury trial on all claims so triable.

By:     /s/ Jordan K. Merson
        Jordan Merson, Esq.

19

Nathan Werksman, Esq.
Samuel A. Martin (to be admitted *pro hac vice*)
*Attorneys for Plaintiff*
950 Third Avenue, 18th Floor
New York, New York 10022
Telephone: (212) 603-9100
Facsimile : (347) 441-4171
jmerson@mersonlaw.com
nwerksman@mersonlaw.com
smartin@mersonlaw.com

20